[Civ. No. 905.   Third Appellate District.—February 26, 1912.]

## STOCKTON IRON WORKS, a Corporation, Respondent, v. BENJAMIN WALTERS, Appellant.

APPEAL FROM ORDER DENYING NEW TRIAL—ERRORS IN PLEADINGS NOT REVIEWABLE.—Where there is no appeal from the judgment, but solely an appeal from an order denying a new trial, alleged error of the court in striking out a counterclaim and portions of the answer of the defendant appealing, which could only be reviewed upon an appeal from the judgment, cannot be considered upon the appeal from such order.

ID.—EFFECT OF CODE AMENDMENT AS TO JUDGMENT-ROLL—SCOPE OF APPEAL FROM ORDER NOT ENLARGED.—Notwithstanding the amendment of 1907 to section 670 of the Code of Procedure makes "all orders striking out any pleading in whole or in part" a part of the judgment-roll, yet such amendment does not enlarge the scope of an appeal solely taken from an order denying a motion for a new trial, upon which no question as to the sufficiency of the pleadings or findings can be reviewed; but only such matters can be considered as are made grounds of the motion, upon which the superior court may grant or deny the same.

ID.—REFUSAL OF LEAVE TO FILE AMENDED PLEADING—INJURY NOT MADE TO APPEAR.—Where the defendant appealing complains that he was denied leave of the court to file a second amended answer and counterclaim, which was requested upon the granting of the motion to strike out, and the overruling of defendant's demurrer to the complaint, but he did not show at the trial, and does not show upon appeal, how he could improve his answer by amendment, no injury is made to appear by the ruling.

ID.—ACTION FOR PRICE OF STEAMER SHAFT FURNISHED—SUFFICIENCY OF SHAFT—CONFLICTING EVIDENCE—RETENTION AND USE—SUPPORT OF VERDICT.—In an action for the agreed price of a steel shaft completely equipped for use in defendant's steamer, where sufficiency of the shaft for the purpose for which it was intended was in controversy, and defendant claimed an absolute agreement of plaintiff to furnish a better shaft, and the evidence upon those questions was substantially conflicting, but it appeared without conflict that defendant had retained and worked the original shaft for sixteen months up to the time of trial, without indications of weakness therein, the verdict for plaintiff for the agreed price was sufficiently supported.

ID.—VERDICT FOR AGREED PRICE "WITHOUT INTEREST"—INTEREST WAIVED BY PLAINTIFF—INSTRUCTION BY CONSENT OF PARTIES—AMENDMENT IN COURT—APPELLANT NOT INJURED.—Where the jury after retirement and deliberation had reached a verdict for the plaintiff for the agreed price, and asked for an instruction as to whether they could "cut out the interest," whereupon the plaintiff expressly waived the interest, and both parties agreed to an instruction that they could dispense with the interest, and the court asked them if they wished to retire, to which the foreman replied that he thought it unnecessary, and the jury immediately amended their verdict by adding to the price agreed upon the words, "without interest," and handed in their verdict so amended in open court, and upon being polled, every juror agreed that it was his verdict, it does not appear that appellant was injured by such amendment in his favor in open court.

ID.—RULINGS UPON EVIDENCE—FURNISHING OF SHAFT—STATEMENTS IN
ABSENCE OF DEFENDANT—PAROL EVIDENCE TO VARY CONTRACT.—
The court properly ruled that it was immaterial that plaintiff con-
tracted with another company to forge the shaft furnished; that
statements out of the presence of the defendant could not bind him;
and that the terms of the written contract could not be waived by
parol evidence.

ID.—RULINGS NOT PREJUDICIAL.—It is held that no rulings of the court
upon evidence were prejudicial, and that the evidence which went
to the jury in its entirety fairly presented the theories of the re-
spective parties; that defendant was given every reasonable oppor-
tunity to present every material fact at his command, and that it
does not appear that plaintiff was permitted to sustain its case by
evidence not legally admissible or, at least, which was erroneously
admitted to defendant's prejudice.

ID.—PROPER INSTRUCTIONS.—It is held that the instructions, taken as a
whole, fairly and correctly presented all of the issues raised by the
pleadings.

APPEAL from an order of the Superior Court of San
Joaquin County denying a motion for a new trial. C. W.
Norton, Judge.

The facts are stated in the opinion of the court.

Arthur L. Levinsky, for Appellant.

C. W. Miller, and R. C. Minor, for Respondent.

CHIPMAN, P. J.—This is an action brought by plaintiff
against defendant to recover the sum of $1,460, alleged to be
owing for work performed and materials furnished in the re-
pairing of a steamer called the "H. E. Wright."

In his amended answer defendant admitted that plaintiff
performed certain work and furnished certain materials, but
denied that they were for the "repair of said steamer 'H. E.
Wright,' " but alleges that plaintiff entered into an agree-
ment with defendant whereby plaintiff agreed to construct
and place in said steamer a certain steel shaft and its neces-
sary attachments (describing them), "which said shaft was
to be a first-class shaft and in a perfect condition, and fit for
the purposes for which it was ordered, . . . for the sum of
$1,460"; that, prior to the placing of said shaft in said
steamer defendant discovered that the said shaft "was not in

first-class and perfect condition, but, on the contrary, said shaft was improperly made and the same was defective, and had a serious flaw and defect therein'' (particularly describing it), by reason of which it was ''not reasonably fit for the purposes for which it was ordered and to be used,'' and defendant refused to accept said shaft; that plaintiff then and there agreed to make a new shaft, ''perfect and first class, in the place and stead of said imperfect and defective shaft, and requested defendant to temporarily receive the said defective shaft and its attachments, and to use the same until a new, first class and perfect shaft and its attachments could be made and placed in said steamer''; that, relying on said promise and not otherwise, ''defendant received said shaft temporarily and until said new shaft could be made; that at said time plaintiff guaranteed defendant against all loss or damage he might suffer by his use of said imperfect shaft,'' while it was making for him a new and perfect shaft; that thereafter defendant demanded of plaintiff a new and perfect shaft in place of said defective shaft, but plaintiff refused and ever since has refused to comply with defendant's said demand. Defendant admitted that no part of said $1,460 or alleged interest has been paid, but denied that the whole or any part thereof is now due or owing from defendant to plaintiff. Paragraph VII of the amended answer is a denial that the said shaft ''was of the value of $1,460, or any other sum of money, whatsoever, or at all, by reason of its imperfect condition and by reason of the said defect aforesaid.'' Paragraph VIII is an offer or tender of said shaft to plaintiff and a demand that plaintiff ''detach and strip said shaft from the wheel and every part and portion of said steamer,'' and remove the same therefrom ''without damage or injury to said steamer.'' These two paragraphs were, on motion of plaintiff, stricken out of the answer. Defendant, by way of counterclaim, set up a somewhat similar state of facts and claimed damages by reason thereof. On motion of plaintiff this counterclaim was stricken out. The damages claimed rest upon plaintiff's alleged violation of its agreement to furnish defendant a shaft free from the alleged imperfections.

It was claimed by plaintiff at the trial, and admitted by defendant, that the materials and labor referred to in the com-

plaint and answer were furnished pursuant to the following
offer and acceptance, which appeared in evidence but were not
specifically pleaded:

"May 1, 1909.

"Captain Walters, Steamer H. E. Wright,
    "Stockton, Calif.

"Dear Sir: We will furnish you with one 8″ hammered
steel shaft completely machined with two new forged steel
cranks (and divers other fittings as part of said shaft, and
not necessary to be enumerated) complete, delivered on our
wharf for the sum of $1460.00.

"(Signed)    STOCKTON IRON WORKS."

Defendant replied May 3, 1909, as follows: "We hereby
accept your proposal of May 1st for one hammered steel shaft
complete and you may proceed to get this shaft out at once.

"(Signed)    BENJ. WALTERS."

The cause was tried by a jury and plaintiff had the verdict
for the sum of $1,460, without interest, and judgment passed
for plaintiff accordingly.

Defendant appeals from the order denying his motion for
a new trial on bill of exceptions.

1. Appellant claims that the court erred in striking out his
counterclaim and portions of his answer and also in refus-
ing his application for leave to amend.   Respondent makes
the point that, there being no appeal from the judgment, the
rulings of the court cannot be reviewed; citing *Spence* v.
*Scott,* 97 Cal. 181, [31 Pac. 52]; *Sutton* v. *Stephan,* 101 Cal.
547, [36 Pac. 106]; *Mock* v. *Santa Rosa,* 126 Cal. 330, [58
Pac. 826].   In each of those cases the appeal was on the
judgment-roll without a statement or bill of exceptions.   The
record showed in each case a motion to strike out portions of
defendant's answer and the rulings thereon.   The court held
that the proceedings formed no part of the judgment-roll
and, there being no bill of exceptions or statement, the rul-
ings could not be reviewed.   We have here, however, the
judgment-roll and bill of exceptions, in both of which the
proceedings on the motion are set forth, and it is contended
by appellant that the cases cited do not apply.   Section 670,
Code of Civil Procedure, was amended in 1907 (Stats. 1907,
p. 720), making "all orders striking out any pleading in whole
or in part" part of the judgment-roll.   But the amendment

does not enlarge the scope of the appeal from the order denying a motion for new trial. Questions relating to the sufficiency of the complaint, rulings upon demurrers and sufficiency of the findings to support the judgment cannot be considered upon an appeal from an order denying a new trial. (*Great Western Gold M. Co.* v. *Chambers,* 153 Cal. 307, [95 Pac. 151].) Only such matters can be considered as are made grounds upon which the superior court is authorized to grant or deny the motion. (*Crescent etc. Co.* v. *United Upholsterers,* 153 Cal. 433, [95 Pac. 871].) "A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court or referee." (Code Civ. Proc., sec. 656.) It is pointed out in Hayne on New Trial, Revised Edition, page 5 et seq., that the statutory definition consists of several elements: 1. That a new trial is a re-examination of an *issue of fact;* 2. That the re-examination of the *issue of fact must be in the same court;* 3: That the re-examination of the issue of fact must take place *after a new trial and decision.* The author says: "The word 'trial' as used in the definition under consideration refers to an investigation of the issues of fact raised by the pleadings." The granting of a motion to strike out parts or all of a pleading is not one of the grounds for new trial. (Code Civ. Proc., sec. 657.) Since "all orders striking out any pleading in whole or in part" (Code Civ. Proc., sec. 670) are part of the judgment-roll, it would seem no longer necessary to present the matter by bill of exceptions, as was the case when such orders formed no part of the judgment-roll (cases *supra*) ; but however this may be, we are satisfied that such orders can only be reviewed on appeal from the judgment.

2. Defendant complains that he was denied leave to file a second amended answer and counterclaim. The request was made upon the granting of a motion to strike out and the overruling of defendant's demurrer to the complaint. Defendant did not, at the trial, nor does he now, suggest why he desired to amend his answer nor show that he could improve it by amendment. In short, no injury is made to appear by the ruling.

3. It is urged that the verdict was contrary to the evidence. As is quite often the case, appellant rests his argument largely on testimony adduced in support of his theory, ignoring the

fact that this testimony was in conflict with that submitted by
the plaintiff or, if not in conflict, might have been discredited
by the jury. We cannot undertake a full review of the evi-
dence, making, as it does, a somewhat voluminous record.
Briefly stated, there was evidence that when the shaft was de-
livered at plaintiff's wharf and after it had been put on tim-
bers aboard the steamer, defendant discovered in it what he
regarded as a serious defect, impairing its strength and safety,
and refused to accept it. This defect consisted in what is
technically called a "pipe"—a small hole in the center of
the end of the shaft, "where the crank is shrunk on," which
was explored with a wire about the size of a knitting needle
or ordinary hair pin to the depth of nearly nine inches. A
wire of the size of a twenty-penny wire nail was inserted about
five and one-half inches. There was considerable discussion
between defendant and his engineer and representatives of
plaintiff as to the effect of this blemish, which resulted in de-
fendant's installing the shaft. He claims that he consented
upon the conditions set forth in his answer. As to just what
representations were made there is much conflict. There was
evidence that defendant was given assurances that the shaft
was not weakened by this defect; that it was fit and would
do the work it was intended for; that plaintiff would guar-
antee it for a year, and that if after trial for a reasonable
time it proved unfit, plaintiff would replace it with a new
one. Defendant attempted to show that plaintiff conceded
the unfitness of the shaft and promised unconditionally to
replace it with a new one, but plaintiff's witnesses denied this
and testified that no such admission and no such promise
was made. Witnesses for the plaintiff, who showed their
qualifications as experts, testified that this so-called "pipe"
had no appreciable effect on the shaft to weaken it or impair
its usefulness or length of service. Witness Pennington tes-
tified: "I have had a lot of experience in these things, what
is a good and what is not a good shaft. I have made shafts
that go to sea, and for vessels that are inland shafts, such as
the steamer 'H. E. Wright.' I saw the shaft here in the
steamer 'H. E. Wright' in Stockton. I consider the shaft
was in perfect condition. Of course there was in one end
what we call a 'pipe,' probably caused by lapping from draw-
ing out the end of the shaft. This pipe I don't think a

particle of detriment to the shaft. I thought the shaft was a perfect shaft for the work it was intended for." He was asked the difference between a pipe and a crack and answered: "Well, a crack is something on the surface, this was something in the center of the shaft that may have been caused by the hammer." He testified that this was not an unusual condition and "did not impair its usefulness at all for the purposes for which it was intended." There was much testimony of like import. It appeared that the shaft had been in constant use for about sixteen months at the time of the trial and it showed no indications of weakness. We think there was sufficient evidence to justify the verdict.

4. Some time after the case had been given to the jury they came into the courtroom and, on being asked if they had agreed upon a verdict, the foreman answered: "Not exactly, your Honor. We want instruction in regard to the interest, whether the jury could cut out the interest, or have anything to do with the interest. The printed instruction says interest from a certain date." The court replied that all it could do was to call attention to the instructions. Counsel for plaintiff thereupon waived the interest and, with consent of both parties, the court instructed the jury orally that inasmuch as interest had been waived in open court, "if the jury see fit they may cut the interest out of the verdict." The court then asked the jury if they desired to return to the jury-room. The foreman answered: "I don't think it would be necessary." After "a short pause" the jury passed up the verdict for the sum of $1,460 without interest, and on being polled answered that it was their verdict. The error now claimed is that the verdict was rendered "without retiring from the courtroom to find a verdict." Apparently the jury had reached a conclusion before coming into the courtroom except as to the item of interest, and when plaintiff waived that item, as it had a right to do, it was competent for the jury to return their verdict without retiring from the courtroom. Besides, defendant has not shown, inferentially or otherwise, that he was injured by the conduct of the jury. Apparently he profited by the alleged error.

5. Defendant assigns fifty or more errors in rulings upon the evidence. Some of these are given scant notice by counsel; many of them are mere references to pages of the tran-

script and the number of the exception there shown, with no explanatory statement in the brief.   Others appear to be particularly relied upon and such of these latter as seem to call for comment will be noticed.

Witness Tretheway, president of plaintiff company, was asked whether the articles, at the time of delivery at plaintiff's wharf, were "in the condition required by the proposal and offer of acceptance." He answered "Yes," after which defendant objected as leading, suggestive and a conclusion.   The court allowed the answer to stand.   The objection should have been sustained if it had been made in time and the answer should have been stricken out if defendant had asked to have it done.   The principal issue involved the condition of the shaft at the time of its delivery and whether it met the requirements of the proposal and acceptance.   But this whole subject was later gone into very fully by both sides and in great detail.   We think the error was without prejudice.

6. It appeared that plaintiff contracted with Pennington & Co., of San Francisco, to forge the shaft.   On cross-examination Tretheway was asked if he informed defendant of this fact and, on objection of plaintiff as immaterial, the court so ruled.   Plaintiff's offer was to "furnish" a shaft such as was described, not personally to manufacture it.   The fact was immaterial.

7. Tretheway had testified, on cross-examination, that his foreman had informed him that objection was made to the shaft; that he sent for Pennington (one of the firm of Pennington & Co.) and they together went on board the vessel where the shaft then was, and there met her engineer and Captain Curry, her commander; that they tried to convince Captain Curry and the engineer that the shaft was in every way suitable for the work.   "Q.   Then the engineer and Captain Curry had, before or at that time, informed you the shaft was not fit for the purposes for which it had been ordered?" The court sustained plaintiff's objection to the question.   It appeared that defendant was not present at this meeting with Curry and the engineer.   The court had previously ruled that what was done by the parties present could be shown, but that the declarations made in the absence of defendant were not admissible and defendant declined to be bound by what was said in his absence.   Plaintiff objected because neither the en-

gineer nor Curry had qualified as experts, and the question was calculated to get from them by indirection what they could not testify to directly. The tendency of the question was to get before the jury an opinion which neither Curry nor the engineer was qualified to give.

8. The question was asked by defendant of witness Burnett, who was an engineer of experience, but did not show expert knowledge of shafts, whether this particular shaft was "a safe or unsafe shaft." Defendant admitted that witness was not an expert, but contended that expert knowledge was not necessary to qualify the witness to give an opinion upon the safety of this shaft. We do not agree with defendant in this contention. It is argued that later on the court allowed plaintiff to submit expert testimony by witness Burns, who, it is alleged, admitted that he was not an expert. Of course, any subsequent error of the court cannot affect the question now before us. It seems, however, that the court, after Burns was examined as to his qualifications, held that he was qualified to give an opinion as to the effect a so-called "pipe" would have on such a shaft as is in question.

9. Defendant's witness, Purington, was asked what effect would this shaft have upon the steamer if it should break. An objection by plaintiff was sustained. Purington had never worked a shaft on a steamboat, though he had expert knowledge in making shafts and could and did testify as to the effect a "pipe" would have in a shaft. We cannot see that any answer he might have made would meet any issue in the case. The effect which the breaking of the shaft might have would depend upon so many other facts that any answer would be purely speculative. There was no issue as to the damage which might result from the breaking of the shaft.

10. On cross-examination this witness was allowed to answer certain questions put by plaintiff as to whether after a year's use any defect in the shaft would be likely to develop itself. Defendant objected on the ground that the witness had not qualified except to a limited extent as an expert. The answers were favorable to defendant and hence he was not injured.

11. The cross-examination of defendant's witness, Curry, as to what Pennington said when he and Tretheway met Curry on the steamer, was fairly within the rule which permits much

latitude in testing the recollection of the witness as to what took place on the occasion referred to.

12. Witness Donaher was defendant's engineer who was present when Pennington and Tretheway went aboard the steamer to examine the shaft. He was one of the class of witnesses, frequently met with, who wander at will and volunteer irresponsive answers. In his cross-examination by plaintiff he several times exhibited this disposition and, on motion of plaintiff, his answers were stricken out. We discover no error in these instances. On redirect, an objection to a leading question was sustained. No error is apparent. His answer: "We had a defective shaft, and always expected and looked for it to break; even when I would go to bed I would think about it," was properly stricken out.

13. Defendant was called as a witness and was asked to state what changes, if any, were made in the contract at the time it was signed. The court properly refused to allow the terms of the written contract to be varied by parol.

14. Evidence of defendant's ability to pay for the shaft at any time was immaterial. His ability was not questioned; it was rather his disposition to pay.

15. Whether or not defendant had entered into a new contract with anyone for a shaft was not material.

16. Witness Gavigan, for plaintiff in rebuttal, was foreman of plaintiff's works and was quite fully examined as to his expert knowledge and capacity to judge of the effect this "pipe" would have and whether it weakened the shaft. The court admitted his testimony, and we cannot say that its ruling was error.

17. Witness Pennington was called in rebuttal by plaintiff and was asked whether the condition under which he found the shaft was an unusual condition and, over defendant's objection, answered: "Not at all. In my judgment it did not impair its usefulness at all for the purpose for which it was intended." He had qualified as an expert foundryman in making shafts and was qualified to testify as to whether the condition of this shaft was an unusual one.

We think it safe to say that the evidence which went to the jury, taken in its entirety, fairly presented the theories of the respective parties and was free from prejudicial error. Defendant presented his defense with zeal and ability and, it

seems to us, was given every reasonable opportunity to place before the jury every material fact at his command. Nor can we discover that plaintiff was permitted to sustain its case by evidence not legally admissible or, at least, which was erroneously admitted to defendant's prejudice.

18. The court instructed the jury that if they believed from the evidence that the articles were furnished under the written offer of plaintiff and written acceptance of defendant, then "these two papers constitute a contract between the parties, and the plaintiff is entitled to recover the amount sued for herein, unless your minds are satisfied by a preponderance of the evidence that the said articles were not reasonably fit for the purposes intended." The court charged the jury that "a person who sells machinery manufactured by him is held by law to impliedly warrant such machinery to be reasonably fit for the purpose for which it was intended," and that "there is no legal requirement that such machinery should be perfect, unless it be so expressly agreed between the buyer and seller"; and further, that "all that is required, in the absence of an express agreement to the contrary, is that such machinery is reasonably fit for the purpose for which it is intended." Also that "an imperfection in such machinery that does not render it reasonably unfit for the use for which it was intended will be insufficient to justify the refusal of the buyer of such machinery to accept and pay for the same, and in this case, if you find from the evidence that the machinery sold by plaintiff to defendant was reasonably fit for the purposes for which it was intended, then you must find for the plaintiff." Defendant complains that, under these instructions, he was compelled, by a preponderance of the evidence, to show that the shaft was not reasonably fit, and that when he showed that there was an imperfection, the burden at once shifted to plaintiff to show, by preponderance of the evidence, that the shaft was reasonably fit for the purposes for which it was intended. It is also claimed as error in instructing the jury that, unless expressly so agreed, there was no legal requirement of plaintiff to furnish a perfect shaft, defendant claiming that, under section 1768 of the Civil Code, it was plaintiff's duty to furnish a "perfect" shaft. Defendant made the alleged imperfection in the shaft the subject of his defense in his answer, and his

evidence was directed in a large degree to that issue. It was met by plaintiff in rebuttal, and it seems to us that the court did not, although it might properly have done so, instruct the jury that the burden of proof on this issue was on defendant. The court correctly stated the duty of plaintiff, as provided by section 1770 of the Civil Code, that is, that it must appear that the machinery was reasonably fit for the purpose for which it was intended. On the issue raised by defendant the jury were instructed to be guided by the preponderance of the evidence, as to which there was much conflict. In modifying one of defendant's proposed instructions, which was framed in view of section 1778, Civil Code, to make it conform to the rule stated in section 1770 of the same code, the court did not err.

The court did not err in instructing the jury that statements made by Pennington and Tretheway, at the time they met Captain Curry on the steamer, "cannot be received as going to the establishment of any agreement between the parties touching a new shaft or any guaranty or promise concerning it." Defendant was not present and no one there at the time had any authority to speak or act for him in the making of any contract. The court did not take the evidence away from the jury any further than this.

The instructions, taken as a whole, fairly and correctly, we think, presented all the issues raised by the pleadings.

Hart, J., and Burnett, J., concurred.